**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SCHNEIDER ELECTRIC USA, INC., ASCO POWER TECHNOLOGIES, L.P., AND ASCO POWER SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> VERTIV GROUP CORPORATION, <br><br> Defendant. | No. 1:26-cv-05756 |

### NOTICE OF REMOVAL

Stuart W. Yothers
Jay Schaefer
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: 212.326.3939
Facsimile: 212.755.7306
Email: syothers@jonesday.com
Email: jschaefer@jonesday.com

David M. Maiorana (*pro hac vice* forthcoming)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Email: dmaiorana@jonesday.com

*Attorneys for Defendant*
*Vertiv Group Corporation.*

Pursuant to 28 U.S.C. §§ 1331 and 1338, Defendant Vertiv Group Corporation ("Vertiv") hereby files this Notice of Removal of the above-captioned action to this Court and states as follows:

1.      On June 4, 2026, an action was filed by Plaintiffs Schneider Electric USA, Inc., ASCO Power Technologies, L.P., and ASCO Power Services, Inc., in the Supreme Court of the State of New York, County of New York, titled *Schneider Electric USA, Inc., ASCO Power Technologies, L.P., and ASCO Power Services, Inc. v. Vertiv Group Corporation*, Index No. 653331/2026 (the "State Court Action").

2.      Vertiv was served with the Summons and Complaint on June 8, 2026.

3.      This Notice is being filed with this Court within thirty days of Vertiv being served with a copy of a summons and Plaintiffs' initial pleading setting forth the claims for relief upon which Plaintiffs' action is based.

4.      This Court is the proper district court for removal because the State Court Action is pending within this district.

5.      Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon the sole defendant in the State Court Action is attached hereto as **Exhibit A**.

6.      The claims for relief alleged in the State Court Action arise under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*. Thus, this Court has original subject-matter jurisdiction over the above-captioned action pursuant to 28 U.S.C. §§ 1331 and 1338. The above-captioned action may properly be removed to this United States District Court pursuant to 28 U.S.C. § 1441(a).

7.      Claims "arise under" federal patent law for purposes of 28 U.S.C. § 1338 where the well-pleaded complaint establishes either that "federal patent law creates the cause of action or

that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.), Inc.*, No. 18-cv-10758, 2019 WL 4805771, at *4 (S.D.N.Y. Sept. 30, 2019) (quoting *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 808–09 (1988)). To demonstrate that patent law is a necessary element of one of the well-pleaded claims, the patent law issue must be "'(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

8.      The "question of federal patent law" under this test must arise on the face of the Plaintiffs' well-pleaded complaint. *Id.*

9.      Federal courts regularly hold that jurisdiction is proper where a determination of patent infringement or claim scope is necessary to render relief on a plaintiff's state-law claims, such as where—as here—a contract dispute hinges on whether certain patents or patent claims are practiced. *See, e.g.*, *Warsaw Orthopedic, Inc. v. Sasso*, 977 F.3d 1224, 1228-29 (Fed. Cir. 2020) (where declaratory judgment asserted no breach of licensing agreement because, *inter alia*, products sold by defendant were not covered by the patents for which the licensor sought remedies, "the issues of . . . claim scope are well-pleaded in this declaratory complaint, are actually disputed, are substantial to the federal system as a whole, and the federal-state judicial balance would not be disrupted by the district court's exercise of declaratory jurisdiction."); *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15–CV–3997, 2015 WL 6685523, at *4 (S.D.N.Y. Oct. 29, 2015) (finding that unjust enrichment claim "necessarily raise[s]" patent law question because plaintiff "must necessarily prove infringement of one or more of the patents in the patent pool" for which royalties were sought and that "the only way [plaintiff] can prove that

3

[defendant] benefited at its expense is by showing that it used (and therefore infringed) a patent in the pool."); *VariBlend*, 2019 WL 4805771, at \*3, 5-10 (S.D.N.Y. Sept. 30, 2019) (holding that unjust enrichment claim triggered § 1338 jurisdiction because "the Complaint asks the Court to consider whether the Patents and the Crystal Dispensers are 'Licensed Technology' covered by the License Agreement, which "necessitates construing the '107 Patent's claims."); *cf. also Jang v. Boston Sci. Grp.*, 767 F.3d 1334, 1336-38 (Fed. Cir. 2014) (noting that plaintiff's right to recover on breach of contract claim "depends on an issue of federal patent law—whether the stents sold by petitioners would have infringed [plaintiff]'s patents.") (cleaned up); *Dell Techs. Inc. v. TiVo Corp.*, 392 F. Supp. 3d 704, 718-19 (W.D. Tex. 2019) (defendant's "breach-of-contract claim necessarily raises a federal issue of patent infringement" where complaint alleged defendant breached a licensing agreement by providing software that infringed intellectual property rights of a third party because plaintiff "would have to prove that [defendant's] product was infringing").

10.    Similarly, the Federal Circuit has recognized that cases invoking infringement as a basis for a right to relief "raise the real world potential for subsequently arising infringement suits affecting other parties" such that the patent laws are sufficiently implicated to trigger Section 1338 jurisdiction, in both licensing disputes and tortious interference claims. *Cf. Jang*, 767 F.3d at 1337. "Under disputes like the one at issue here in which resolution of the contract claim itself requires resolution of underlying issues of infringement, there exists the possibility that the patentee would file suits alleging infringement by others . . . ." *Id.*; *cf. also Warsaw Orthopedic,* 977 F.3d at 1228-29; *Maxchief Investments Ltd. v. Wok & Pan, Indus., Inc.*, 909 F.3d 1134, 1140 n.3 (Fed. Cir. 2018) (noting that "because a tortious interference claim like the one presented here involves determining infringement . . . this is a situation in which there is

4

potential for 'inconsistent judgments between state and federal courts"); *see also MPEG LA*, 2015 WL 6685523, at *3; *VariBlend*, 2019 WL 4805771, at *5-10.

11.     Here, jurisdiction is proper under Section 1338 at least because the Complaint, on its face, raises patent-law issues as necessary bases for one or more of its claims.

12.     With respect to Count 1, ASCO alleges that "Vertiv breached Section 7.05 of the Cross License Agreement by purporting to assign its rights in the Licensed Patents to DPW without ASCO's consent." Exhibit A, Complaint ¶ 62. ASCO alleges that "[t]he Licensed Patents were licensed under the terms of the Cross License Agreement at least because ASCO Used the Licensed Patents or any patents or patent applications related thereto in the ASCO Power Business by making, using, selling, providing, commercializing, exploiting, or incorporating the Technology Right into or as part of its product and service offerings as of the Close Date." Exhibit A, Complaint ¶ 56. "Technology Right" is defined in the Cross License Agreement to mean "any and all Intellectual Property, excluding Trademarks, together with any and all Intellectual Property Rights." Exhibit A, Complaint at Ex. 2, p. 2. And "'Used' with reference to Technology Rights Used by a Party or Subsidiary as of the Closing Date means: (a) the Technology Right covers or is incorporated into, or was used to make, any product or service made, used, sold, imported, provided, commercialized or otherwise exploited by the Party or Subsidiary as of the Closing Date; . . . [.]" Exhibit A, Complaint ¶ 27. To determine whether ASCO secured any license rights to the allegedly Licensed Patents, the Complaint (and Cross License Agreement) necessarily and explicitly invoke the language of 35 U.S.C. § 271(a) (*e.g.*, makes, uses, offers to sell, or sells any patented invention). *See, e.g., Jang*, 767 F.3d at 1336-37 (finding Section 1338 jurisdiction where recovery on breach-of-contract claim "depends on an issue of federal patent law—whether the stents sold by petitioners would have infringed

5

[plaintiff]'s patents.") (cleaned up); *VariBlend*, 2019 WL 4805771, at *5-10 (unjust enrichment claim merited § 1338 jurisdiction because "the Complaint asks the Court to consider whether the Patents and the Crystal Dispensers are 'Licensed Technology' covered by the License Agreement, which necessitates construing the '107 Patent's claims."); *MPEG LA*, 2015 WL 6685523, at *3 (holding Section 1338 jurisdiction appropriate where, for unjust enrichment claim, "the only way [plaintiff] can prove that [defendant] benefited at its expense is by showing that it used (and therefore infringed) a patent in the pool.").

13. The same is true for Schneider's Count II, breach of the implied covenant of good faith and fair dealing. *See* Exhibit A, Complaint ¶ 75.a ("Vertiv purported to assign . . . patents that were Licensed Vertiv Technology Rights at least because *ASCO Used the Licensed Patents* or any patents or patent applications related thereto in the ASCO Power Business *by making, using, selling*, providing, commercializing, exploiting, or incorporating the Technology Right . . . .") (emphasis added); ¶ 75.d ("Vertiv knew or should have known that ASCO *Used the Licensed Patents* in the ASCO Power Business as of the Closing Date at least through its PowerQuest® CPMS offering and related services, which commercialized, otherwise exploited, or incorporated at least the Vertiv NX and NXL UPS systems that were *covered by*, incorporated, commercialized, or otherwise exploited Licensed Vertiv Technology Rights, including the *Licensed Patents*.") (emphasis added); *Jang*, 767 F.3d at 1336-37; *see also MPEG LA*, 2015 WL 6685523, at *3; *VariBlend*, 2019 WL 4805771, at *5-10.

14. To obtain its requested relief, the Complaint necessarily asks the Court to apply patent law to the claims of the allegedly Licensed Patents and the products sold by at least ASCO and Vertiv. This application of federal patent law will necessarily require not only claim construction to determine appropriate claim scope, but also an analysis of whether the claims

6

cover or were used by various products. *See, e.g.,* Exhibit A, Complaint ¶ 56 (alleging ASCO was granted a license to the Licensed Patents "at least because ASCO Used the Licensed Patents or any patents or patent applications related thereto in the ASCO Power Business by *making, using, selling*, providing, commercializing, exploiting, or incorporating the Technology Right"), ¶ 42("The Vertiv NX and NXL UPSs, in turn, are *covered by*, incorporate, commercialize, or otherwise exploit the *Licensed Patents . . . .*"); *Warsaw Orthopedic,* 977 F.3d at 1226, 1228-29 (jurisdiction appropriate where parties disputed "whether any claim covered the asserted products" under licensing agreement); *VariBlend*, 2019 WL 4805771, at *5-10 ("[T]he Complaint asks the Court to consider whether the Patents and the Crystal Dispensers are 'Licensed Technology' covered by the License Agreement, which necessitates construing the '107 Patent's claims.").

15.    Promptly after the filing of this Notice of Removal, Vertiv shall provide notice of the removal to Plaintiffs through their attorneys of record in the State Court Action, and shall file a copy of this Notice with the clerk of the Court in the State Court Action, as required by 28 U.S.C. § 1446(d).

Dated: July 7, 2026                                    Respectfully submitted,


                                                       /s/ Stuart W. Yothers
                                                       Stuart W. Yothers
                                                       Jay Schaefer
                                                       JONES DAY
                                                       250 Vesey Street
                                                       New York, NY 10281
                                                       Telephone: (212) 326-3939
                                                       Email: syothers@jonesday.com
                                                       Email: jschaefer@jonesday.com

                                                       David M. Maiorana (*pro hac vice* forthcoming)
                                                       JONES DAY
                                                       901 Lakeside Avenue
                                                       Cleveland, OH 44114
                                                       Telephone: (216) 586-3939
                                                       Email: dmaiorana@jonesday.com

                                                       *Attorneys for Defendant*
                                                       *Vertiv Group Corporation*

8

## CERTIFICATE OF SERVICE

I certify that on July 7, 2026, I caused the foregoing Notice of Removal to be served upon counsel of record for Plaintiffs in the State Court Action via electronic mail.

Dated: July 7, 2026

_/s/ Jay Schaefer_

Jay Schaefer
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939
jschaefer@jonesday.com

_Attorney for Defendant_
_Vertiv Group Corporation_

9